**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

─────────────────────────────

**TINA MARIE T.P.**

                              **Plaintiff,**                      **23-CV-4 Sr**

**v.**

**COMMISSIONER OF SOCIAL SECURITY,**

                              **Defendant.**

─────────────────────────────

## DECISION AND ORDER

        As set forth In the Standing Order of the Court regarding Social Security

Cases subject to the May 21, 2018 Memorandum of Understanding, the parties have

consented to the assignment of this case to the undersigned to conduct all

proceedings, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g).

Dkt. #12.

## BACKGROUND

        Plaintiff applied for supplemental security income ("SSI"), benefits with the

Social Security Administration ("SSA"), on February 5, 2021, at the age of 47, alleging

disability beginning July 8, 2020 due to post traumatic stress disorder; bipolar disorder;

anxiety; headaches; and back issues. Dkt. #4, p.107.

        On June 23, 2022, plaintiff appeared with counsel and testified, along with

an impartial vocational expert ("VE"), Lynn Paulson, at an administrative hearing

conducted by video conference before Administrative Law Judge ("ALJ"), Linda Crovella. Dkt. #4, pp.44-76.

Plaintiff testified that she lives in a house owned by her daughter's boyfriend with her daughter, her daughter's boyfriend, and his adult son. Dkt. #4, p.53. Her bedroom is upstairs; the bathroom is downstairs. Dkt. #4, p.53. Plaintiff attempted to work at a convenient store while her SSI application was pending, but stopped after a few months because the anxiety of dealing with customers was too much for her; she had difficulty concentrating and completing her job duties, including counting her register and stocking the coolers; was arguing with her supervisors; and missed work due to her diverticulitis. Dkt. #4, pp.51-52 & 61-63.

Plaintiff testified that she is prescribed antibiotics when her diverticulitis flares up and that she had been referred to a surgeon because she has had so many flares this year. Dkt. #4, p.59. She has pain in her abdomen and hip and experiences headaches that make her feel as though she is going to throw up two-three times per month. Dkt. #4, p.67. Plaintiff's back pain limits her ability to walk more than 5-10 minutes. Dkt. #4, p.69. Sitting more than 30 minutes at a time also bothers her back. Dkt. #4, p.69. Her back also hurts when she drives. Dkt. #4, p.69. She can lift a gallon of milk, but not more than 20 pounds. Dkt. #4, p.68. Plaintiff testified that it is difficult for her to control her emotions and that she cries daily and can "blow up over no reason" at least once a month. Dkt. #4, p.66.

When asked to assume an individual with plaintiff's age, education, and past relevant work experience who was capable of light exertion but limited to no crawling or climbing of ramps, stairs and scaffolds and no unsupported heights, moving machinery or moving mechanical parts and no more than occasional crouching, kneeling, balancing and stooping, or exposure to loud noises, who could perform simple, repetitive tasks and make simple work-related decisions with occasional or routine changes in the work setting and occasional interaction with supervisors, coworkers and the public, the VE testified that such an individual could work as a merchandise marker, inspector and hand packager, or office helper, each of which were light exertion, unskilled positions. Dkt. #4, pp.72-73. The VE further opined that an individual off task more than 10% of the work day and absent more than once per month would be unemployable. Dkt. #4, pp.73-74.

The ALJ rendered a decision that plaintiff was not disabled on July 26, 2022. Dkt. #4, pp.20-37. The Appeals Council denied review on November 3, 2022. Dkt. #4, p.5. Plaintiff commenced this action seeking review of the Commissioner's final decision on January 3, 2023. Dkt. #1.

## DISCUSSION AND ANALYSIS

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as

a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

To be disabled under the Social Security Act ("Act"), a claimant must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 416.905(a). The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920(a). At step one, the claimant must demonstrate that he is not engaging in substantial gainful activity. 20 C.F.R. § 416.920(b). At step two, the claimant must demonstrate that he has a severe impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related activities. 20 C.F.R. § 416.920(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 416.920(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner considers whether the claimant

has sufficient Residual Functional Capacity ("RFC"), for the claimant to return to past relevant work. 20 C.F.R. § 416.920(e)-(f). If the claimant is unable to return to past relevant work, the burden of proof shifts to the Commissioner to demonstrate that she could perform other jobs which exist in significant numbers in the national economy, based on claimant's age, education and work experience. 20 C.F.R. § 416.920(g).

In the instant case, the ALJ made the following findings with regard to the five-step sequential evaluation: (1) plaintiff had not engaged in substantial gainful activity since the application date of February 5, 2021; (2) plaintiff's lumbar degenerative changes with stenosis, diverticulitis, depression, anxiety disorder and post traumatic stress disorder constituted severe impairments; (3) plaintiff's impairment did not meet or equal any listed impairment; (4) plaintiff retained the RFC to perform work at the light exertion level but could not crawl or climb ladders, ropes or scaffolds, work at unsupported heights or with dangerous moving machinery or moving mechanical parts or be exposed to more than occasional loud noise or be required to climb ramps or stairs, balance, stoop, kneel or crouch more than occasionally and was limited to simple, repetitive tasks and simple work-related decisions with no more than occasional or routine changes in the work setting and no more than occasional interaction with the public; and (5) plaintiff was capable of working as a merchandise marker, inspector and hand packager, or office helper, which are light exertion, unskilled positions, and was not, therefore, disabled within the meaning of the SSA. Dkt. #4, pp.23-37.

<u>Reconciling Consultative Opinion</u>

Plaintiff argues that the ALJ failed to explain how she reconciled the opinion of the consultative examiner, which she found persuasive, with an RFC that did not incorporate limitations for prolonged walking or sitting. Dkt. #6-1, pp.12-13.

The Commissioner responds that the ALJ reasonably interpreted the consultative examiner's assessment of moderate limitations for prolonged sitting and walking great distances to be consistent with a range of light work. Dkt. #10-1, pp.14-17.

Pursuant to the *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68 (Jan. 18, 2017), applicable to claims filed on or after March 27, 2017, the Commissioner is no longer required to afford any specific evidentiary weight to medical opinions, but is obligated to consider all medical opinions and evaluate their persuasiveness based on the following five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, with particular importance placed upon consistency and supportability. *Jacqueline L. v. Comm'r of Soc. Sec.*, 515 F. Supp.3d 2, 7 (W.D.N.Y. 2021), *citing* 20 C.F.R. § 404.1520c(a) & (c). To allow a reviewing court to trace the path of an ALJ's reasoning, an ALJ is required to explain their consideration of the supportability and consistency factors by pointing to specific evidence in the record to support the ALJ's findings regarding medical opinions. *Id.*, *citing* 20 C.F.R. § 404.1520c(b)(2) & (c).

With respect to supportability, the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support the medical opinion, the more persuasive the medical findings will be. *Id.*, *citing* 20 C.F.R. § 404.1520c(c)(1). Similarly, with respect to consistency, the more consistent a medical opinion is with the evidence from other medical and nonmedical sources, the more persuasive the medical opinions will be. *Id.*, *citing* 20 C.F.R. § 404.1520c(c)(2). Supportability focuses on the fit between medical opinion offered by the source and the underlying evidence presented by the source to support that opinion, while consistency focuses on how well a medical source opinion is supported by the entire record. *Rosario v. Comm'r of Soc. Sec.*, 20 Civ. 7749, 2022 WL 819810, at *8 (S.D.N.Y. Mar. 18, 2022). "Even though ALJs are no longer directed to afford controlling weight to treating source opinions – no matter how well supported and consistent with the record they may be – the regulations still recognize the 'foundational nature' of the observations of treating sources, and 'consistency with those observations is a factor in determining the value of any [treating source's] opinion.'" *Id., quoting Shawn H. v. Comm'r of Soc. Sec.*, 2020 WL 3969879, at *6 (D. Vt. July 14, 2020) (alteration in original).

Plaintiff underwent a consultative examination by Russell Lee, M.D., on June 1, 2021. Dkt. #4, pp.477-481. Plaintiff was observed to limp favoring the right side. Dkt. #4, p.479. Her stance was normal. Dkt. #4, p.479. She was unable to walk on heels and toes. Dkt. #4, p.479. She could squat one-half of full. Dkt. #4, p.479. She did not need help changing for the examination or getting on and off the exam table. Dkt.

#4, p.479. She was able to rise from her chair without difficulty. Dkt. #4, p.479.
Plaintiff's cervical spine demonstrated full flexion, extension, lateral flexion bilaterally,
and full rotary movement bilaterally. Dkt. #4, p.479. Her lumbar spine was tender in the
paraspinal area with limited flexion extension, flexion and rotation. Dkt. #4, p.479.
Straight leg raise was positive to 45 degrees supine and 0 degrees in the seated
position. Dkt. #4, p.479. An x-ray of plaintiff's lumbrosacral spine revealed moderate to
severe disc space narrowing associated with reactive hypertostosis at L4-5 with
remaining disc spaces and height of the vertebral bodies well maintained. Dkt. #4,
p.482. Dr. Lee opined that plaintiff "has moderate limitations for activities involving
prolonged sitting, walking great distances, bending, lifting." Dkt. #4, p.480.

        The ALJ noted Dr. Lee's medical source opinion and found it "persuasive
because it is supported by the longitudinal record, including the objective imaging and
longitudinal clinical exam findings." Dkt. #4, p.33. More specifically, the ALJ determined
that Dr. Lee's assessment was "persuasive in that the [plaintiff] has severe physical
impairments that limit her to light work." Dkt. #4, p.33. In contrast, the ALJ found
unpersuasive the opinion of state agency medical consultants that plaintiff was capable
of medium exertion because they were not supported by the longitudinal record,
including the objective imaging and longitudinal clinical exam findings. Dkt.#4, p.32. For
example, the ALJ noted that physical examinations reflected pain and range of motion
deficits that support a limitation to light work. Dkt. #4, p.32.

        A job requiring light exertion requires a good deal of walking or standing,
off and on, for a total of approximately six hours of an eight hour workday, with

intermittent sitting during the remaining time. *Reilly v. Comm'r of Soc. Sec.*, 18-CV-1269, 2020 WL 6507327, at *4 (W.D.N.Y. Nov. 5, 2020), *citing* 20 C.F.R. § 404.1567, *aff'd*, 2022 WL 803316 (2d Cir. Mar. 17, 2022). The Court notes that Dr. Lee did not find any limitation regarding plaintiff's capacity to stand. In any event,"courts in this circuit repeatedly have held that moderate limitations in walking, standing, or lifting are consistent with an RFC for light work." *Edward J. v. Com'r of Soc. Sec.*, 24-CV-696, 2026 WL 183492, at *4 (W.D.N.Y. Jan. 23, 2026), *quoting Gabrielle C. v. Comm'r of Soc. Sec.*, 21-CV-567, 2023 WL 5200159, at *2 (W.D.N.Y. Aug. 14, 2023). Moreover, courts in this Circuit have repeatedly upheld ALJ decisions that a plaintiff could perform light work when there was evidence that the plaintiff had moderate difficulties in prolonged sitting or standing. *Leroy R. v. Comm'r of Soc. Sec.*, 20-CV-1299, 2022 WL 4128894, at *4 (W.D.N.Y. Sept. 12, 2022); *See also White v. Berryhill*, 753 Fed. App'x 80, 82 (2d Cir. 2019) (moderate limitations in standing and sitting compatible with light work); *Harrington v. Colvin*, 14-CV-6044, 2015 WL 790756, at *15 (W.D.N.Y. Feb. 25, 2015) (moderate limitation for sitting, standing and walking not inconsistent with finding the plaintiff could sit, stand, and walk for six hours a day as required for light or medium work). Thus, Dr. Lee's assessment of moderate limitation for prolonged sitting and walking great distances does not preclude light work.

As the ALJ noted, clinical examinations did not suggest greater limitations than those set forth in the RFC. Dkt. #4, p.34. While plaintiff's x-ray did reveal degenerative disc disease at L4-L5, there is no medical evidence of specific treatment relating to her complaints of chronic lower back pain. Moreover, although plaintiff was

observed to have a limp on consultative examination on June 1, 2021, she was observed to walk with a smooth, even and well-balanced gait on May 12, 2021 (Dkt. #5, p.71), and reported that she was walking daily on March 18, 2022. Dkt. #5, p.42. She lived in a home with an upstairs bedroom and a downstairs bathroom and reported that she was able to dress and bathe herself independently, prepare small meals, do a little cleaning, do some yard work, walk around, and drive and shop occasionally. Dkt. #4, pp.53, 314, 374-376, 475 & 478. Plaintiff's psychiatric nurse practitioner, Kyle Wiktor ("NP Wiktor"), consistently noted that plaintiff was able to complete all activities of daily living. Dkt. #4, pp.471, 489, 493, 496 & Dkt. #5, pp.23, 30, 33, 40, & 47. According ly, plaintiff has not met her burden of demonstrating that her RFC was more restrictive than provided by the ALJ. *See Lesanti v. Comm'r of Soc. Sec.,* 436 F.Supp.3d 639, 650 (W.D.N.Y. 2020) ("It is ultimately Plaintiff's burden to prove a more restrictive RFC than the RFC assessed by the ALJ."), *citing Smith v. Berryhill*, 740 Fed. App'x 721, 726 (2d Cir. 2018).

### Migraines

Plaintiff argues that the ALJ failed to adequately assess plaintiff's migraine headaches. Dkt. #6-1, pp.14-16. Specifically, plaintiff challenges the ALJ's determination that her migraines were not a severe impairment given medical evidence that she reported headaches lasting multiple days which required treatment with Toradol injections. Dkt. #6-1, pp.14-15.

The Commissioner responds that although the ALJ found plaintiff's migraines to be non-severe, she considered her complaints and medical treatment related to this condition and ultimately included restrictions for loud noise, heights, and moving machinery or mechanical parts to address the condition. Dkt. #10-1, pp.7-10.

At step two, the ALJ noted plaintiff's history of migraines and the requirement that the limiting effects of this impairment be considered and addressed when determining plaintiff's RFC. Dkt. #4, p.23. However, the ALJ determined that the record did "not show significant concern for headaches, including intense treatment such as accupuncture, Botox injections or nerve blocks for headaches." Dkt. #4, p.23. The ALJ also noted that plaintiff's headaches "appear to be treated conservatively with medication only and were noted to be stable." Dkt. #4, p.23. Although the ALJ therefore considered plaintiff's headaches to be non-severe, she stated that she had included appropriate limitations to address plaintiff's non-severe impairments. Dkt. #4, p.24. At step four, the ALJ noted that plaintiff alleged disability due to, *inter alia*, headaches, and that plaintiff complained that her symptoms made it difficult to stay on task, maintain attention, and to understand what she was doing. Dkt. #4, p.30.

Plaintiff has the burden of establishing that she has a severe impairment, which is defined as any impairment or combination of impairments which significantly limit plaintiff's physical or mental ability to do basic work. *Noelle M. v. Bisiganano*, 24-CV-1196, 2025 WL 2731033, at *4 (D. Ct. Sept. 25, 2025). Although this is a lenient standard, establishing that a person has been diagnosed or treated for a disease or

impairment is not, by itself, sufficient to render a condition severe. *Felix S. v. Comm'r of Soc. Sec.,* 630 F. Supp.3d 423, 428 (W.D.N.Y. 2022). Moreover, even if an ALJ errs in assessing severity at step two, the error is harmless when the ALJ finds other severe impairments and considers the effects of all of plaintiff's impairments through the remainder of the sequential analysis. *Herman S. v. Comm'r of Soc. Sec.*, 577 F. Supp.3d 190, 197-198 (W.D.N.Y. 2022). Thus, an ALJ is only required "to *evaluate* non-severe impairments in the RFC analysis, not to include limitations in the RFC." *Catherine Jean D. v. Comm'r of Soc. Sec*., 2022 WL 4115367, at *3 (W.D.N.Y. Sept. 9, 2022). "To hold otherwise would defy logic: requiring an ALJ to limit a [plaintiff's] ability to work due to a non-severe impairment suggests that the non-severe impairment causes significant work limitations, which runs counter to the non-severity finding." *Id.* As a result, absent evidence that an impairment contributed to functional limitations, an ALJ's failure to mention non-severe impairments in formulating the RFC may be considered harmless. *Michael G. v. Comm'r of Soc. Sec*., 24-CV-6069,  2025 WL 2750478, at *5 (W.D.N.Y. Sept. 29, 2025).

On the day plaintiff filed her application for SSI, February 5, 2021, plaintiff's primary care provider noted that plaintiff's migraines were "[o]verall pretty stable" on her current prescription of Topiramate. Dkt. #5, p.67. Plaintiff denied headaches on review of systems with NP Wiktor on March 17, 2021 and April 14, 2021. Dkt. #4, pp.470 & 489. On May 12, 2021, plaintiff presented to her primary care provider with a headache that had persisted for eight days. Dkt. #5, p.69. She described her headache as throbbing and denied nausea, vomiting or aura. Dkt. #5, p.69. She was given an injection of

Toradol and declined referral to neurology. Dkt. #5, p.71. Plaintiff denied headaches on review of systems with NP Wiktor on May 19, 2021 and June 16, 2021. Dkt. #4, pp.492 & 495. At her annual exam on June 23, 2021, plaintiff reported a worsening headache and requested a Toradol injection. Dkt. #5, pp.74 & 76-77. She denied headaches on review of systems with NP Wiktor on July 14, 2021 and September 8, 2021. Dkt. #5, pp.22 & 29. On November 19, 2021, plaintiff reported that she was not taking her prescription of Topiramate. Dkt. #5, p.79. On December 27, 2022 plaintiff denied headaches on review of systems with NP Wiktor. Dkt. #5, p.32. On February 2, 2022, plaintiff reported a headache that had persisted for three days and requested a Toradol injection from her primary care physician. Dkt. #5, pp.89 & 91. On March 7, 2022, plaintiff denied headaches on review of systems with NP Wiktor. Dkt. #5, p.39. On March 16, 2022, plaintiff reported to her primary care provider that her migraine symptoms "overall are pretty stable." Dkt. #5, p.96. She denied headaches on review of systems with NP Wiktor on May 2, 2022. Dkt. #5, p.46. In light of this evidence indicating that plaintiff received Toradol injections for migraines on three occasions, but otherwise denied headache symptoms, the ALJ's determination that there was no evidence that plaintiff's migraines imposed more than a minimal restriction on her ability to perform basic work functions is supported by substantial evidence. In any event, the ALJ's restriction on exposure to loud noise incorporates a limitation that addresses a common migraine trigger, thereby confirming that the ALJ did consider plaintiff's history of migraines in fashioning plaintiff's RFC. *See Noelle M*., 2025 WL 2731033, at \*7; *See also Brianna J. v. Comm'r of Soc. Sec.*, 24-CV-1016, 2025 WL 2771683, at \*5 (N.D.N.Y. Sept. 29, 2025) (although ALJ did not recognize plaintiff's migraine headaches as a

-13-

severe impairment, RFC was supported by substantial evidence where ALJ provided
noise and environmental limitations in the RFC). Moreover, a limitation to unskilled work
adequately addresses plaintiff's complaints of difficulty maintaining concentration.
*Sanchez v. Comm'r of Soc. Sec.*, 25-CV-353, 2026 WL 91629, at *10 (E.D.N.Y. Jan. 13,
2026).

Mental RFC

Plaintiff argues that the ALJ failed to properly evaluate and sufficiently
explain her assessment of the opinion of plaintiff's licensed mental health counselor.
Dkt. #6-1, pp.16-20.

The Commissioner responds that substantial evidence supports the ALJ's
determination that the opinion of plaintiff's licensed mental health counselor was not
persuasive and that plaintiff was capable of unskilled work with no more than occasional
interaction with the public. Dkt. #1-1, pp.10-14.

Kamie Fields, plaintiff's licensed mental health counselor since 2015,
completed a mental medical source statement dated June 13, 2022. Dkt. #5, pp.121-
126. LMHC Fields noted plaintiff's diagnosis of post-traumatic stress disorder and
bipolar disorder and indicated that plaintiff's Global Assessment of Functioning ("GAF")
score was 55.[1] Dkt. #5, p.121. LMHC Fields opined that plaintiff would be unable to meet

---

[1] Global Assessment of Functioning ("GAF") scores measure how much a person's
psychological symptoms impact their daily life. Scores between 61 and 70 indicate mild
symptoms; scores between 51 and 60 indicate moderate symptoms; and scores between 41

competitive standards with respect to the following aptitudes required for unskilled work:

- maintain attention for two hour segment;

- complete a normal workday and workweek without interruptions from psychologically based symptoms;

- accept instructions and respond appropriately to criticism from supervisors;

- respond appropriately to changes in a routine work setting; and

- deal with normal work stress.

Dkt. #5, p.123. LMHC Fields further opined that plaintiff would be seriously limited in her ability to:

- understand and remember very short and simple instructions;

- sustain an ordinary routine with special supervision;

- make simple work-related decisions;

- perform at a consistent pace without an unreasonable number and length of rest periods; and

- get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes.

Dkt. #5, p.123. LMHC Fields explained that plaintiff

has difficulty w[th] memory and focus especially when under stress to recall simple directions and/or follow through. May become frustrated or angry when feeling pressured or uncertain.

---

and 50 indicate serious symptoms. *Zabala v. Astrue*, 595 F.3d 402, 406 n.3 (2d Cir. 2010). However, a GAF score does not provide a reliable longitudinal picture of a plaintiff's mental functioning for a disability analysis and is entitled to little weight unless it is well supported and consistent with other evidence of record. *Estrella v. Berryhill*, 925 F.3d 90, 97 (2d Cir. 2019). In contrast to LMHC Fields assessment, the Court notes that NP Wiktor reported plaintiff's GAF as 65 throughout plaintiff's treatment records. Dkt. #4, pp.464, 468, 471, 489, 493, 496,  Dkt. #5, pp.23, 30, 33, 40, 47.

Dkt. #5, p.123. She further explained that plaintiff had a history of trauma and opined

that plaintiff would be unable to maintain socially appropriate behavior and would be

seriously limited in her ability to interact appropriately with the general public. Dkt. #5,

p.124. LMHC Fields also explained that when plaintiff attempted employment, she

> became overly anxious, yelling, slamming and threatening to
> quit, apparently due to inability to comprehend instructions
> and expectations. Especially when triggered.

Dkt. #5, p.124. LMHC Fields opined that plaintiff wold be absent from work

approximately 4 days per month due to her impairments or treatment. Dkt. #5, p.127.


        The ALJ did not find LMHC Fields' opinion persuasive because it was not

supported by or consistent with plaintiff's longitudinal treatment and examination

findings. Dkt. #4, p.33. As the ALJ noted, plaintiff's treatment record demonstrated that

plaintiff "treated conservatively with medication and therapy with good relief from her

symptoms." Dkt. #4, pp.31-32. For example, immediately before her SSI application,

plaintiff's condition was noted as stable, with good energy and stable mood. Dkt. #4,

p.464. She was dressed appropriately with good grooming and hygiene, good eye

contact, and clear, goal directed speech. Dkt. #4, p.464. She was noted to be alert and

oriented with fair judgment and insight; intact memory; and good attention and

concentration. Dkt. #4, p.464. These findings continue throughout the relevant time

period, with plaintiff reporting that her depression and anxiety were stable on March 17,

2021; her moods were good and energy okay on April 14, 2021; her moods and energy

were good on May 19, 2021; her anxiety was stable, energy good and there was no

depression on June 16, 2021; she was not experiencing difficulty with anxiety or

depression and felt things were stable on July 14, 2021 despite some stress and anxiety regarding a tree that hit her car; denying problems with motivation, concentration or focus and reporting that she was doing very well on September 8, 2021; she had to give up her job because it was too much and there was too much drama, but presenting with stable mood on December 29, 2021; and was doing very well on March 7, 2022 and May 2, 2022. Dkt. #4, pp.467, 470, 489, 492; 495; Dkt. #5, pp.22, 25, 32, 39, 46.

Plaintiff underwent a consultative psychiatric examination with Janine Ippolito, Psy.D., on June 1, 2021. Dkt. #4, pp.473-476. Plaintiff reported sad and depressed mood, fatigue, low energy and social withdrawal, as well as anxiety and nervousness triggered by being around unfamiliar people and driving in wintertime. Dkt. #4, p.474. Plaintiff also reported that she was feeling "kind of anxious" upon examination. Dkt. #4, p.474. She also reported short-term memory problems and difficulty concentrating. Dkt. #4, p.474. Dr. Ippolito observed that plaintiff presented with full range and appropriate affect in speech and thought; coherent and goal directed thought process; adequate expressive and receptive language; and satisfactory appearance. Dkt. #4, p.474. Her recent and remote memory skills were impaired due to problems focusing, with plaintiff recalling 3/3 objects immediately and 3/3 objects after a delay and 6 numbers forward but no numbers backward. Dkt. #4, p.475. Her attention and concentration was also observed to be impaired due to difficulty with the serial subtraction tasks. Dkt. #4, p.475. Dr. Ippolito opined that plaintiff

> presents as able to understand, remember, or apply simple
> directions and instructions, use reason and judgment to
> make work-related decisions; sustain an ordinary routine
> and regular attendance at work, maintain personal hygiene

and appropriate attire, and demonstrate awareness of
normal hazards and take appropriate precautions with no
evidence of limitations. She can understand, remember, or
apply complex directions and instructions, interact
adequately with supervisors, coworkers, and the public; and
sustain concentration and perform a task at a consistent
pace with mild limitations. She can regulate emotions,
control behavior, and maintain well-being with moderate
limitations. These limitations are due to her emotional
distress.

Dkt. #4, p.475. The ALJ found Dr. Ippolito's opinion persuasive because it was

supported by and consistent with plaintiff's longitudinal treatment and examination

findings. Dkt. #4, p.34. The ALJ determined that plaintiff would have a mild limitation in

her ability to understand, remember or apply information; a mild limitation in her ability

to interact with others; a mild limitation in her ability to concentrate, persist or maintain

pace; and a moderate limitation in her ability to adapt or manage herself. Dkt. #4,

pp.27-29.

In light of the contrast between LMHC Fields' mental medical source

statement and plaintiff's psychiatric treatment records, as well as the medical source

statement of the consultative examiner, the ALJ's determination that LMHC Field's

opinion was not persuasive and that plaintiff was capable of working an unskilled job

requiring no more than occasional interaction with the public is supported by substantial

evidence. *See Mangual v. Comm'r of Soc. Sec*., 600 F.Supp.3d 313, 329 (S.D.N.Y.

2022) ("As a general matter, moderate limitations are not an impediment to the ability to

perform gainful activity, particularly when an RFC has already limited a claimant to

unskilled, routine work."); *Lee W. v. Comm'r of Soc. Sec.,* 20-CV-8,  2021 WL 1600294,

at *6 (W.D.N.Y. April 23, 2021) (unskilled work, by definition, already accounts for limitations in mental functioning, including limitations interacting with others); *Lewis v. Comm'r of Soc. Sec.*, 18-CV-150, 2019 WL 3321896, at *5 (W.D.N.Y. July 24, 2019) ("It is well settled that a limitation to unskilled work sufficiently accounts for moderate limitations in work-related functioning, including stress.");*Gibbons Thorton v. Colvin*, 14-CV-784, 2016 WL 611041, at *4 (W.D.N.Y. Feb. 16, 2016) (determination that plaintiff should not have consistent contact with the general public accounts for moderate social limitations).

## CONCLUSION

Based on the foregoing, plaintiff's motion for judgment on the pleadings (Dkt. #6), is denied and the Commissioner's motion for judgment on the pleadings (Dkt. #10), is granted.

The Clerk of the Court is directed to close this case.

**SO ORDERED.**

**DATED:**      **Buffalo, New York**
                  **February 10, 2026**

                                        **s/ H. Kenneth Schroeder, Jr.**
                                        **H. KENNETH SCHROEDER, JR.**
                                        **United States Magistrate Judge**